**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JOSEPH CORSALE, JR.,**

               **Plaintiff,**               1:08-cv-572
                                                                      (GLS\RFT)

        **v.**

**DELAWARE & HUDSON RAILWAY
COMPANY, INC.,** doing business as
**CP RAIL,**

               **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Davis Law Firm, PC<br>Two Bala Plaza, Suite 300<br>P.O. Box 2591<br>Bala Cynwyd, PA 19004-6591 | G. SANDER DAVIS, ESQ. |
| **FOR THE DEFENDANT:** | |
| McNamee, Lochner Law Firm<br>677 Broadway<br>Albany, NY 12207-2503 | SCOTT A. BARBOUR, ESQ. |

**Gary L. Sharpe
District Court Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiff Joseph Corsale, Jr. brought this action against his employer, Delaware & Hudson Railway Company, Inc. (D&H), under the Federal Employers' Liability Act (FELA),[1] alleging D&H's liability for injuries he sustained to his left knee in the course of his employment. (*See* Compl., Dkt. No. 1.) Pending is D&H's motion for summary judgment. (Dkt. No. 18.) For the reasons that follow, the motion is denied.

### **II. Background**

Corsale began his employment with D&H in July 1954. (*See* Def. SMF ¶ 1, Dkt. No. 18:12.) From approximately 1955, Corsale has held the position of a trainman, most recently as a conductor. (*See id.*) Beginning around 2004, Corsale was assigned to work a job that traveled between D&H's rail yard in Saratoga Springs, New York, the "Saratoga Yard," and D&H's rail yard in Albany, New York, the "Kenwood Yard." (*See id.* at ¶ 4.) As part of his job, Corsale was required to "yard" his train. (*See id.* at ¶ 3.) Specifically, "[o]nce the engineer of the train 'parked' the train on the track designated by the yardmaster, [Corsale] would get off the engine,

---

[1] 45 U.S.C. § 51, *et seq.*

2

disconnect the power cables running from the engine to the railcars, and align the track switches so that the engine could pull away from the rest of the train/railcars." (*Id.*)

On March 31, 2006, Corsale reported to work at the Saratoga Yard and was instructed, along with an engineer, to take a train to the Kenwood Yard and "yard" it on track "KS3," which is located in the south end of the yard. (*See id.* at ¶¶ 5, 6.) Upon arrival at the Kenwood Yard, the engineer pulled the train onto track KS3, and Corsale began the "yarding" process by exiting the cab of the locomotive and disconnecting the power cable. (*See id.* at ¶ 8.) Corsale then "crossed over the track and proceeded up the track toward the switch, walking between tracks 4 and 5." (*Id.*) Corsale claims that as he was walking, the ground "went out from under [him]," allegedly causing him to twist and injure his left knee. (*See id.* at ¶ 9; Pl. Reply to SMF at ¶ 9, Dkt. No. 21:1.) According to Corsale, the area sank down "probably a foot," and the size of the area that gave way was "probably maybe two or three feet by three feet." (*See* Pl. Reply to SMF at ¶ 10, Dkt. No. 21:1.)

Corsale alleges that the ground "gave way" because it "was the scene of a previous derailment, and the fill in the area was not properly

3

tamped down and leveled." (*See* Pl. Answer to Interrogs. ¶ 18, Dkt. No. 18:8.) Corsale claims that, prior to his incident, others told him about a derailment in the "south end of the yard," and that, in the "days or weeks" leading up to the incident, "he observed railroad employees working in the area where the accident occurred and using machinery for removing and replacing railroad ties and rails." (*See* Corsale Dep. at 39-41, Dkt. No. 18:4; Pl. Reply to SMF ¶ 37, Dkt. No. 21:1.) According to Corsale, "[u]sing that equipment, and the work repairing tracks, always results in disturbance to the ground adjacent to the tracks, which also needs to be repaired." (Pl. Reply to SMF ¶ 38, Dkt. No. 21:1.)

On May 30, 2008, Corsale filed suit against D&H under FELA, claiming that D&H negligently failed to provide him with a reasonably safe place to work, and thereby caused him to injure his left knee, incur medical expenses, endure physical and emotional pain and suffering, and suffer a loss of earnings and earning capacity. (*See* Compl. ¶¶ 1013, Dkt. No. 1.) On January 15, 2010, following discovery, D&H moved for summary judgment on Corsale's claims. (*See* Def. Mem. of Law at 1, Dkt. No. 18:10.)

### III. Standards of Review

**A.    Summary Judgment**

4

The standard for the grant of summary judgment is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

## B. <u>Federal Employers' Liability Act</u>

FELA is a broad remedial statute that must be construed liberally in order to effectuate its purposes. *Marchica v. Long Island R.R. Co.*, 31 F.3d 1197 (2d Cir.1994). Under FELA, a railroad engaged in interstate commerce is liable to "any person suffering injury while he is employed by [the railroad] ... for such injury ... resulting in whole or in part from the negligence of any of [its] officers, agents, or employees." 45 U.S.C. § 51.

The Second Circuit "construes the statute, in light of its broad remedial nature, as creating a relaxed standard for negligence as well as causation." *Williams v. Long Island R.R. Co.*, 196 F.3d 402, 406 (2d Cir. 1999) (internal quotation marks and citation omitted). However, "FELA is not a strict liability statute, and the fact that an employee is injured is not proof of negligence." *Id.* (internal quotation marks and citations omitted). "FELA does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his

5

negligence, not the fact that injuries occur." *Capriotti v. Consol. Rail Corp.*, 878 F. Supp. 429, 431 (N.D.N.Y. 1995) (internal quotation marks and citation omitted). Accordingly, "the traditional common law negligence elements of duty, breach, causation and damages are still applicable." *Id.* (citation omitted).

FELA requires an employer "to provide its employees with a reasonably safe place to work and this includes the duty to maintain and inspect work areas." *Sinclair v. Long Island R.R.*, 985 F.2d 74, 76 (2d Cir. 1993) (citations omitted). "An employer breaches its duty to provide a safe workplace when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees."[2] *Gallose v. Long Island R.R.*, 878 F.2d 80, 84-85 (2d Cir.1989) (citations omitted); *see also Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006).

"[R]easonable foreseeability of harm is an essential ingredient of [FELA] negligence." *Gallick v. Balt. & Ohio R.R. Co.*, 372 U.S. 108, 117 (1963) (citations omitted). Under FELA, the reasonable foreseeability

---

[2] "[W]hether the railroad used reasonable care in furnishing its employees a safe place to work is normally a question for the jury." *Sinclair v. Long Island R.R.*, 985 F.2d 74, 77 (2d Cir. 1993) (quotation marks and citation omitted).

6

element "requires proof of actual or constructive notice to the employer of the defective condition that caused the injury."[3]  *Sinclair*, 985 F.2d at 77.

In evaluating causation, the question is "whether the proofs justify with reason the conclusion that e[m]ployer negligence played any part, even the slightest, in producing the injury ... for which damages are sought."  *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957); *see also Marchica*, 31 F.3d at 1207 ("[T]he traditional concept of proximate cause is supplanted by the less stringent standard that there be some causal relation, no matter how slight, between the injury and the railroad's breach of duty." (citing *Gallick*, 372 U.S. at 116)).  These are factual issues and "[a]s with all factual issues under the FELA, the right of the jury to pass on [them] must be liberally construed."  *Gallose*, 878 F.2d at 84-85.

"[T]he Second Circuit has placed a particularly heavy burden on parties seeking summary judgment on FELA claims."  *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 514 (S.D.N.Y. 2000).  Thus, "[u]nder the FELA, 'the case must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to

---

[3]Whether an employer had notice typically presents a question of fact.  *See Paul v. Genesee & Wyo. Indus., Inc.*, 93 F. Supp. 2d 310, 318 (W.D.N.Y. 2000).

7

find for the plaintiff.'" *Gadsden v. Port Auth. Trans-Hudson Corp.*, 140 F.3d 207, 209 (2d Cir.1998) (quoting *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 828 (2d Cir.1994)).

## IV.  Discussion

### A.  Evidence of Negligence

D&H argues that Corsale's claim cannot survive summary judgment because it is "based solely on [Corsale's] own conclusory and speculative statements." (Def. Mem. of Law at 10, Dkt. No. 18:10.)  In making this argument, D&H focuses primarily on the fact that Corsale has failed to offer definitive proof that a derailment occurred and that subsequent repairs were made.  Corsale responds that he has offered sufficient circumstantial evidence to survive D&H's motion.  (*See* Pl. Mem. of Law at 2-3, 7-9, Dkt. No. 21:4.)

As explained above, a FELA claim is subject to dismissal at the summary judgment stage only where "there is absolutely no reasonable basis for a jury to find for the plaintiff."  *Gadsden*, 140 F.3d at 209 (citation and internal quotation marks omitted).  In other words, summary judgment is not appropriate where a FELA claimant offers "at least ... some evidence that would support a finding of negligence."  *O'Hara v. Long Island R.R.*,

8

665 F.2d 8, 9 (2d Cir. 1981). In this case, having reviewed the record evidence in the light most favorable to Corsale, the court is not persuaded that Corsale has failed to make that showing.

As noted earlier, Corsale claims that D&H negligently failed to properly "tamp down and level" ground that was disturbed in the course of making track repairs following a derailment, and therefore created the injury-causing condition. Contrary to D&H's contentions, this theory finds sufficient support in the record to avoid summary judgment. Corsale testified that, shortly before his accident, he was told that a train had derailed near the site of the accident, and that he observed D&H making repairs to the track in and around that area. (*See* Corsale Dep. at 39-42, Dkt. No. 18:4; Corsale Aff. at ¶¶ 2-4, Dkt. No. 21:3.) The testimony of Ronald Pierce, Corsale's manager at the time of the accident, generally corroborates this portion of Corsale's account. Specifically, Pierce testified that he recalled a derailment occurring in the vicinity of the accident during the relevant period, and that the "track department went in and repaired the track." (*See* Pierce Dep. at 13-14, Dkt. No. 21:2.) Thus, while D&H may dispute that a derailment occurred and subsequent repairs were made, Corsale's corroborated testimony as to those issues gives rise to questions

9

of fact properly left to a jury.

Further, should a jury find that a derailment occurred and repairs were made, the record would support a reasonable inference that D&H was negligent in making those repairs. Namely, based on his years of railroad experience, Corsale testified that derailment repair involves the disturbance of ground adjacent to the tracks, and that the disturbed ground must be tamped and leveled to ensure that it can hold weight. (*See* Corsale Aff. ¶¶ 5, 6, Dkt. No. 21:3.) Corsale also testified that he had walked in the area of the accident many times previously, but had not experienced any problem with his footing until after the repair work was done. (*See id.* at ¶ 7.) Given that D&H does not appear to dispute these assertions, and since it has offered no alternative explanation for why the ground could have "given way" as Corsale alleges, the court is not persuaded that summary judgment is warranted here. More specifically, while the evidence of negligence is circumstantial and by no means definitive, the court is hesitant to find that it provides no reasonable basis for a finding of negligence. *See Gadsden*, 140 F.3d at 209; *Mele v. Metro. Transp. Auth.*, No. 04Civ03661, 2006 WL 2255080, at *3 (S.D.N.Y. Aug. 4, 2006) ("Circumstantial evidence from which a jury may make a reasonable

10

inference of negligence is sufficient to trigger an obligation to pay damages under the FELA." (citing *Rogers*, 352 U.S. at 508)); *see also Dewalt v. Consol. Rail Corp.*, 869 F.2d 1489 (6th Cir. 1989) (unpublished) ("[A] FELA case may reach the jury with only circumstantial evidence of very slight employer negligence playing a part in producing the plaintiff's injury." (citation omitted)).

Accordingly, D&H's motion as to the sufficiency of the evidence is denied.

## B. Need for Expert Testimony

D&H next argues that because Corsale will not offer expert testimony, he cannot make out a case of negligence. (*See* Def. Mem. of Law at 13-16, Dkt. No. 18:10.) Specifically, D&H contends that whether the ground was properly tamped and leveled is an issue involving scientific, technical, or other specialized information that is beyond knowledge of the lay juror. The court rejects this argument and agrees with Corsale that a jury would not necessarily need expert testimony to assess whether the disturbed ground was properly tamped and leveled. Accordingly, D&H's motion as to this issue is denied.

## C. Foreseeability

11

D&H's final argument is that Corsale's claim should be dismissed because Corsale's injury was not reasonably foreseeable. (*See* Def. Mem. of Law at 16-18, Dkt. No. 18:10.) Specifically, D&H argues that "[t]here is no evidence that [it] was on notice (actual or constructive) of a defective condition on the track in question." (*Id.* at 17.) However, as Corsale correctly points out, "[t]he element of notice is satisfied by [a] defendant's creation of a dangerous condition." *Hairston v. Long Island R.R.*, No. 00 Civ. 7208, 2003 WL 21254196, at *5 (S.D.N.Y. May 30, 2003) ("[W]hen a defendant itself has created the potential hazard, it has actual notice of the foreseeable dangers associated with it." (citations omitted)). Thus, were the jury to find that D&H failed to properly tamp and level the walkway so that it could safely support weight—thus creating the dangerous condition—it could also find that D&H had the requisite notice of that condition. Accordingly, D&H's motion on the issue of foreseeability is denied.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that D&H's motion for summary judgment (Dkt. No. 18) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 29, 2010
Albany, New York

_____
United States District Court Judge